UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ELIZABETH A. GRIEGO,                                Case no. 18-10747-t13

         Debtor.

## **OPINION**

Before the Court is the third fee application of Debtor's former chapter 13 counsel, New Mexico Financial and Family Law, P.C. In the application, counsel seeks allowance of $1,180 of professional fees, $77.49 in costs, and taxes on the professional fees. Debtor objected to the application. In two prior applications, the Court allowed $15,858.81 in fees, costs, and taxes. Having considered the application and Debtor's objection, the Court will allow $1,000 in fees, $77.49 in costs, and taxes on the allowed fees.

A.     Facts.

The Court finds:[1]

Debtor filed this case in March 2018. Attorneys Don Harris and Dennis Banning and paralegal Jill Stevenson worked on the case. Prepetition, Debtor gave counsel a $5,000 retainer.

Debtor filed a chapter 13 plan in April 2018. The plan proposed an initial payment of $3,000, followed by 35 monthly payments of $400. The plan proposed to pay Debtor's pre-petition mortgage arrearage through the plan but for Debtor to make the regular mortgage payments "outside" the plan. The plan estimated $5,000 of additional legal fees, costs, and taxes through

---

[1] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

confirmation.

The chapter 13 trustee; New Mexico Taxation & Revenue; and Bayview Loan Servicing (holder of the mortgage loan) objected to the plan. Their objections were resolved by a stipulated confirmation order, entered October 17, 2018. The confirmation order increased the monthly plan payment to $800 and the plan length to 60 months.

Counsel filed its first fee application on December 14, 2018, seeking allowance of $9,148.42. No objections were filed and the Court approved the application on May 7, 2019.

Counsel's second fee application was filed January 6, 2020, seeking allowance of an additional $6,439.99. No objections were filed. On April 13, 2020, the Court approved the second application.

On January 24, 2020, Bayview transferred its mortgage claim to Great AJAX Operating Partnership, LP. The transfer form showed Gregory Funding, LLC as the party to whom notices should be sent. The transfer form stated that payment should be sent to a P.O. Box in Los Angeles, California. The form was signed by Kelley L. Thurston as Great Ajax's and/or Gregory Funding's agent. After the claim was transferred, counsel communicated with Ms. Thurston and/or Gregory Funding to determine Debtor's loan balance and monthly payment amount.

On September 3, 2020, Great AJAX transferred the claim to an affiliate, AJX Mortgage Trust I. The transfer did not affect the name or address where Debtor's mortgage payments were to be sent, nor to whom notices should be sent.

Counsel had to work with Ms. Thurston/Gregory Funding at some length to resolve the amount of Debtor's monthly mortgage payment, which Debtor believed should have been $875 a month, but which Gregory Funding was billing at $918.11. It is not clear whether this matter was ever fully resolved.

-2-
Case 18-10747-t13    Doc 102    Filed 06/23/21    Entered 06/23/21 17:28:11 Page 2 of 10

In June 2020, Debtor filed a claim with her homeowner's insurer for hail damage to the roof of her house.[2] In July 2020, Gregory Funding—apparently acting as an intermediary between Debtor and the insurance company—sent Debtor a check from the insurance company for $7,072.84. Gregory Funding asked Debtor to sign the check and return it so Gregory Funding could send it to a roofing contractor hired to repair Debtor's roof. Debtor did so.

In August 2020 the insurance company told Debtor that the check had not been presented for payment. To resolve the matter, Debtor asked the insurance company to cancel the check and issue a new one.

At some point (apparently near the end of August 2020) Debtor sought counsel's assistance in dealing with the roof repair issue. Counsel worked with Gregory Funding and Debtor beginning around September 15, 2020, to ensure that Gregory Funding had all the documents it needed to pay the insurance proceeds to the roofing contractor. In mid-to-late September, Debtor received a new insurance check and brought it to counsel. On September 30, 2020, counsel sent the check to Gregory Funding for forwarding to the roofing contractor.

On November 25, 2020, counsel filed the third fee application. The application seeks allowance of attorney fees, costs, and gross receipts tax for services rendered from January 6, 2020, to November 7, 2020. Debtor objected on December 3, 2020, saying that she had not agreed to the third application and that "all I wanted was this mess to be taken care of and I totally disagree on this."

By December 16, 2020, the roofing contractor still had not received the check and Debtor's roof still had not been repaired. Counsel's attempts to contact Gregory Funding were unsuccessful,

---

[2] The facts related to hail damage and insurance coverage are taken from a draft document titled "Motion to Hold Gregory Funding in Contempt," filed as an attachment to counsel's motion to withdraw.

so on December 16, 2020, counsel sent Ms. Thurston a draft motion to hold Gregory Funding in contempt. According to counsel, this communication caused Gregory Funding to issue a check "immediately," but there was a problem—the check was issued to Joe Griego, Debtor's deceased husband. According to Ms. Thurston, the check was made payable to Joe Griego because counsel did not respond to Ms. Thurston's request for drafting instructions. Counsel returned the check to Gregory Funding and requested that it be reissued, payable to the roofing contractor. Ms. Thurston responded by email on December 29, 2020, asking for additional paperwork.

On January 8, 2021, counsel sent a status letter to Debtor, enclosing Ms. Thurston's December 29 email and advising Debtor to follow the instructions and communicate directly with Ms. Thurston. The status letter also informed Debtor that counsel would be withdrawing as her bankruptcy counsel, due to a breakdown in the attorney-client relationship and in communication. Debtor faxed the required documents to Ms. Thurston on January 10, 2021.

Despite the decision to file a motion to withdraw, counsel continued to work on the roof repair problem. Mr. Banning spoke to Ms. Thurston on January 14, 2021, about the matter. By January 26, 2021, Debtor's roof had finally been repaired.

On January 26, 2021, counsel filed a motion to withdraw as Debtor's bankruptcy counsel. Debtor objected to the motion on February 5, 2021, attaching a number of documents. Debtor stated:

> I was told three times different ladies and I don't think that was right everything was supposed to be kept private I needed help to get my roof repaired and got done so I want to see if you think that was fair who tells another person that they are not representing me another words he's got a mess to clean up. . . and yes I am angry with them All of this was done on Stupidity when you say something about another Company look at your own first. Thank You and I don't like what was told and done to me I hope you understand my point and again Thank You Very much !!!

Despite her objection, however, Debtor did not appear at a preliminary hearing on the motion to

withdraw. The Court granted the motion to withdraw.

At the March 9, 2021, hearing on the third fee application, Debtor did not object to specific billing entries. Instead, she expressed her frustration about the roof repair status, with the amount the mortgage company billed her each month, and with the way counsel handled those matters. She also argued that counsel treated her unfairly after she objected to the third fee application.

B.  Law Governing Debtor Attorney Fee Allowance in Chapter 13.

Compensation of chapter 13 counsel is governed by § 330(a)(4)(B),[3] which provides:

> In a ... chapter 13 case ... the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

"The attorney seeking compensation bears the burden of proving entitlement to all fees and expenses requested." *In re Dille*, 2021 WL 864201, at *2 (Bankr. W.D. Mo.), citing *In re Kula*, 213 B.R. 729, 736 (8th Cir. BAP 1997). Thus, counsel must demonstrate that the fees requested are for costs and services that were actual and necessary and, if so, that that the fees are reasonable. *In re Sepulvida*, 2021 WL 1961914, at *4.

C.  The Fees and Costs Were Actual and Necessary

Under Section 330(a), the Court may award counsel "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses." § 330(a)(1)(A), (B). "Actual" services are those that have been performed before the compensation is awarded. *See In re Sepulvida*, 2021 WL 1961914, at *4, citing *In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr. D. Colo. 1989). Services are "necessary" when they benefit the debtor (in a

---

[3] This is true for work done pre- or post-confirmation. *See, e.g.*, *In re Conner*, 559 B.R. 526, 533 (Bankr. D.N.M. 2016) (awarding supplemental fees pursuant to § 330(a)).

chapter 13 case), or when they were required for "the administration of, or beneficial toward" completing the case. *Sepulvida*, 2021 WL 1961914, at *4.

The fee application seeks $840 in attorney fees (4.2 hours) and $340 in paralegal fees (3.4 hours). Ms. Stevenson's time was mainly spent drafting notices and correspondence, communicating with Debtor, and communicating on Debtor's behalf with the mortgage servicer. Time billed by Mr. Harris ($340) was for legal analysis, discussions with the chapter 13 trustee and Mr. Banning, and drafting the fee application. [4] Time billed by Mr. Banning ($480) was for work done to get Debtor's roof repaired.

Having reviewed and considered the docket, the billing records, and the parties' arguments, the Court concludes that the billed services were actually performed and necessary.

Expenses and costs of $77.49 are requested. The expenses, "noticing fees" and copy charges, were actual and necessary.

D. <u>Reasonableness</u>.

The reasonableness of professional fees is determined by examining the factors in § 330(a)(3)[5] and those discussed in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–

---

[4] Mr. Harris did not bill for an approximately 36-minute meeting with Debtor on September 8, 2020, saving Debtor $120 in attorney fees.

[5] The § 330(a)(3) factors are: (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

719 (5th Cir. 1974).⁶ *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246–47 (10th Cir. 2013). The Court weighs the § 330(a)(3) and *Johnson* factors as follows:

*§ 330(a)(3)(A): Time spent*. The Court does not question the reasonableness of the time spent on the majority of the billing entries. Some, however, appear to be unreasonably high. In their initial fee application, counsel stated that, "[a] minimum charge of one-tenth of an hour is charged (if any charge is even made) . . . for reviewing correspondence[.]" In the Court's view, .1 hour (six minutes) is a reasonable amount of time to spend reviewing or drafting a typical email.⁷ Yet in a handful of entries, counsel billed 1.5 cumulative hours of attorney time to review, draft, or respond to a total of 7 emails; and in one instance, counsel billed .2 hours to review a one-page transfer of claim. Considering the nature of the correspondence and having reviewed the transfer of claim, the Court finds that these entries should reasonably have been billed at .1 hours. Accordingly, the Court will reduce the fees by $180.

*§ 330(a)(3)(B): Rates charged*. Messrs. Harris and Banning billed $200/hour, while Ms. Stevenson billed $100/hour. They are experienced, knowledgeable professionals. Their rates are reasonable.

*§ 330(a)(3)(C): Necessary/beneficial*. The work done was necessary and beneficial to the Debtor.

---

⁶ The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
⁷ The Court does not reduce the fee for email exchanges that, based on billing-entry notes, were evidently more substantial than a simple email exchange.

*§ 330(a)(3)(D): Timeliness*. The work was done timely. Most of the delay in repairing the roof was caused by Gregory Funding. Some delay may have been caused by counsel's failure to respond to Ms. Thurston's request for check drafting instructions. While this could warrant a reduction in approved fees, the Court has no evidence that would assist it and could not say what if any reduction might be reasonable.

*§ 330(a)(3)(E): Skill/experience*. Messrs. Harris and Banning are experienced and skilled chapter 13 lawyers. Ms. Stevenson is an experienced and skilled bankruptcy paralegal.

*§ 330(a)(3)(F): Customary compensation in non-bankruptcy cases*. The rates charged are comparable to the rates of similarly experienced and skilled attorneys for nonbankruptcy work.

*Johnson factor ("JF") 1: Time and labor required?* Debtor's mortgage servicer was difficult to deal with so Debtor requested counsel's intervention. Counsel was able to get Debtor's roof repaired.

*JF 2: Novelty and difficulty of the questions?* It does not appear that any of the legal issues addressed in this bankruptcy case were particularly novel or difficult.

*JF 3: Skill requisite to perform the legal service properly?* Counsel's professionals have the requisite skills.

*JF 4: Preclusion of other employment due to acceptance of the case?* There is no evidence that counsel was precluded from other work by taking Debtors' bankruptcy case.

*JF 5: Customary fee?* In this district, the customary fee to take a "typical" chapter 13 case through plan confirmation is about $5,000 in attorney and paralegal fees, plus costs and tax. Some post-confirmation work is needed in many cases (a motion to incur debt, for a plan moratorium, or the like), typically costing $1,000-$2,000. Counsel has already been awarded $15,858.81. The new cumulative total will be $16,993.72. That is a very high fee for a chapter 13 case.

*JF 6: Whether the fee is fixed or contingent?* The fee is fixed.

*JF 7: Time limitations imposed by the client or circumstances?* Significant time pressures in this case arose from Debtor's roof damage, combined with Gregory Funding's inefficiency.

*JF 8: Amount involved, and results obtained?* Counsel helped Debtor get her roof fixed. While it appears Debtor still disagrees with the amount Gregory Funding bills her every month for the mortgage payment, the disputed amount ($43) probably is not worth paying counsel to fight over.

*JF 9: Experience, reputation, and ability of the attorneys?* Counsel's professionals are experienced and skilled.

*JF 10: Undesirability of the case?* There is no indication that this case was undesirable.

*JF 11: Nature and length of professional relationship with the client?* Insofar as the Court is aware, the professional relationship commenced in February 2018, immediately before the petition date.

*JF 12: Awards in similar cases?* Given Gregory Funding's remarkable inability to get Debtor's roof fixed, the fees awarded to counsel in this application are reasonable and in line with awards in similar cases.

*Other*. The Court regrets the falling out between counsel and Debtor. Debtor is upset that counsel told third parties about its decision to withdraw before it told her. If that is what happened, her feelings are justified. The evidence on this point is thin. Ms. Stevenson's January 8, 2021, letter states that counsel had decided to withdraw and that Debtor had orally agreed to the withdrawal. The letter enclosed a consent to the withdrawal. In addition, Ms. Thurston's January 15, 2021, letter to Mr. Harris refers to a January 6, 2021, email requesting consent to the withdrawal. The

Court cannot tell whether counsel told Debtor about its decision to withdraw before letting other people know.

More generally, the Court cannot tell from the record whether the breakdown in the relationship was caused by counsel, Debtor, or both. Whatever the truth, it is clear that Debtor was upset by how the relationship ended, and the Court wishes things had turned out differently. Nevertheless, it is to counsel's credit that it did not move to withdraw until Debtor's roof had been repaired. While it appears that work on this issue caused the dispute between counsel and Debtor, it is good that the roof got repaired.

With respect to the negotiations about the monthly mortgage payment amount, the Court does not have enough evidence to fault counsel's work on this matter. If the monthly mortgage payment amount still concerns Debtor, she should file a motion with the Court or talk to the chapter 13 trustee. Surely this relatively minor dispute can be resolved without undue time or expense.

## Conclusion

With the $180 adjustment discussed above, the Court finds that the requested fees and expenses were actual, necessary, and reasonable. A separate order approving the fees as adjusted will be entered. The Court wishes Debtor success during the remainder of her chapter 13 plan and thereafter.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 23, 2021
Copies to: electronic notice recipients

-10-
Case 18-10747-t13   Doc 102   Filed 06/23/21   Entered 06/23/21 17:28:11 Page 10 of 10